IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KIMBERLY ANN DOWNS-BRIGGS,<br>　　　　　　　Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>　　　　　　　Defendant. | Case No. CV - 09 -1634 - PHX - JWS<br><br>ORDER AND OPINION<br><br>[Re: Motion at Docket 17] |

## I.  MOTION PRESENTED

Plaintiff Kimberly Downs-Briggs ("Downs-Briggs") applied to the Social Security Administration ("SSA") for disability insurance benefits on July 21, 2006.[1]  After a hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision,[2] and the Appeals Council denied review.[3]  Downs-Briggs filed a complaint in this court alleging that the final decision denying benefits was in error for several reasons.[4]  Thereafter, Downs-Briggs filed a motion for summary judgment at docket 17.  Defendant Michael J. Astrue ("the Commissioner") filed a response at docket 19, and Downs-Briggs replied at docket 24. For the reasons stated below, the plaintiff's motion is denied.[5]

---

[1] Docket 1; Administrative Record ("AR") 61.

[2] AR 7-20.

[3] AR 1-3.

[4] Docket 1.

[5] Oral argument was not requested and would not assist the court.

## II.  BACKGROUND

Downs-Briggs lost her job after an argument with her supervisor on January 1, 2006.  Since that time her medical history has included treatment for various mental and physical impairments, including bipolar disorder, depression, anxiety disorder, energy and motivation irregularities, migraines, and various related symptoms. The ALJ found that Downs-Briggs' bipolar disorder and anxiety disorder were her only severe symptoms. At the hearing, Downs-Briggs testified that her mental impairments were extremely severe; and she presented evidence from her treating physician, Dr. Rockwell, that, if true, would preclude her from working.[6]

## III.  STANDARD OF REVIEW

The Social Security Act provides for payment of DIB to people who have contributed to the Social Security program and who suffer from a physical or mental disability.[7]  For purposes of the Act, a "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."[8]  A person is not disabled if he or she is capable of engaging "in any . . . kind of substantial gainful work which exists in the national economy."[9]

---

[6]AR 45.

[7]42 U.S.C. § 423(a)(1).

[8]42 U.S.C. § 423(d)(1)(A).

[9]42 U.S.C. § 423(d)(2).

Upon denial of disability benefits after a hearing by an ALJ, a claimant may request that the SSA Appeals Council review the ALJ's decision.[10] "Where, as here, the Appeals Council denies a request for review of an ALJ's decision, the decision of the ALJ represents the final decision of the Commissioner."[11] After a final decision of the Commissioner, the claimant may seek judicial review by the district court.[12]

On *de novo* review, a district court may enter, upon the pleadings and a transcript of the record, a judgment affirming, modifying, or reversing the ALJ's decision, with or without remanding the case for a rehearing.[13] The district court must uphold the ALJ's decision if it is supported by substantial evidence and the ALJ has applied the correct legal standards.[14]

## IV.  DISCUSSION

Downs-Briggs argues that the ALJ's decision should be reversed because it is based on legal error and is contrary to substantial medical evidence. The principal alleged error is at Steps Four and Five of the evaluation, wherein the ALJ supposedly failed to properly weigh medical evidence and subjective complaint testimony, set forth legally sufficient RFC findings, and apply the GRIDs. Downs-Briggs also alleges, without

---

[10] 20 C.F.R. § 404.967.

[11] *Baston v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193 n.1 (9th Cir. 2004) (citing 20 C.F.R. §404.981).

[12] 42 U.S.C. §405(g).

[13] 42 U.S.C. §405(g).

[14] *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2001).  See also *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

supporting the allegations, that the ALJ failed to fully and fairly develop the record, and made errors at Step 2 and Step 3.  Because the ALJ's final decision was properly based on substantial evidence, and all legal errors were ultimately harmless, the decision will not be overturned on review.

I. The ALJ's Residual Functional Capacity Finding Was Legally Sufficient

Downs-Briggs alleges that decision contains a legal error because the RFC findings incorrectly weigh physicians' opinion evidence.  Downs-Briggs argues that the ALJ did not give clear and convincing reasons for rejecting the treating physicians' opinions, and that the ALJ failed to properly weigh consulting physician evidence.

Cases in this circuit distinguish among treating physicians and examining physicians.[15]  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.[16]  But if the treating doctor's opinion is contradicted by another doctor, the Commissioner may reject this opinion by providing "specific and legitimate reasons" supported by substantial evidence in the record.[17]

The ALJ gave great weight to state agency psychologist Dr. Goldberg, finding that his opinion was consistent with the evidence of record.  Downs-Briggs argues that

---

[15] For purposes of this Opinion, the term "physician" or "doctor" includes psychologists and other health professionals who do not have M.D.'s.  *See* 20 C.F.R. § 404.1527 (defining "medical opinions" as "statements from physicians and psychologists and other acceptable medical sources," and prescribing the respective weight to be given the opinions of treating sources and examining sources).

[16]*Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988).

[17]*Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

the ALJ should have instead relied on the opinions of Dr. Rockwell, a treating physician, and Dr. Huddleston, an examining physician.  The ALJ considered but largely rejected Dr. Rockwell's opinions because they were contradicted by the opinion evidence of Dr. Huddleston.  Because the ALJ found that the treatment records were more consistent with Dr. Huddleston's assessments of Downs-Briggs' impairments, the ALJ chose to largely reject Dr. Rockwell's opinion.  Because the assessments of Dr. Rockwell were contradicted by other medical evidence, the ALJ was only required to give specific and legitimate reasons for so rejecting this testimony.  The ALJ's rejection of Dr. Rockwell's assessment because it was inconsistent with his own treatment records satisfies this standard. The ALJ identified Dr. Rockwell's GAF assessment of 20, indicating suicidal tendencies, which contradicted the doctor's reported lack of suicidal tendencies. Although the plaintiff identifies *other* medical evidence supporting this GAF score, this does not rehabilitate Dr. Rockwell's opinion from internal inconsistencies. Because one of the reasons given by the ALJ is sufficient, the others will not be considered. Downs-Briggs' arguments are not unpersuasive, but the ALJ's decision was legally sufficient and supported by medical evidence; this court cannot overturn the decision on review simply because it may have reached a different result.

      The ALJ gave some weight to Dr. Huddleston's assessments, but Downs-Briggs argues that she rejected the doctor's specific residual functional capacity assessments. An ALJ effectively rejects a treating physician's opinion where he ignores it in his opinion and makes contrary findings. "[The] failure to offer reasons for doing so [is] legal

error."[18]  Dr. Huddleston's opinions include only severity ratings (moderate, moderately severe, and severe).  Severity ratings do not describe function and do not usefully convey the extent of capacity limitations.[19]  The ALJ otherwise adopted Dr. Huddleston's assessments. Thus, Dr. Huddleston's opinion evidence were not rejected without comment: the ALJ's findings are substantially supported by them.

## II. The ALJ's Decision was Sufficient at Step Five

Downs-Briggs also alleges that the ALJ did not properly apply the GRIDs. At step five, the ALJ determines whether the claimant is able to perform other work in the national economy in view of her age, education, and work experience, and in light of the residual functional capacity. If so, the claimant is not disabled.  If not, the claimant is considered disabled.[20]  The burden shifts to the Commissioner at step five.[21] The Commissioner can meet this burden by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.[22]  The Medical-Vocational Guidelines are commonly referred to as "the grids." If a claimant's residual functional capacity and vocational characteristics correspond precisely to the grids, the grids are used to direct a finding of "disabled" or "not disabled."[23]  The grids may be used alone at Step Five where they "completely and accurately represent a claimant's limitations. . . .  In other

---

[18] *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir.1996).

[19] POMS DI 24510.065.B.1, *available at* 2001 WL 1933372.

[20] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2008).

[21] *Id.*

[22] *Id.* at 1099.

[23] 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00.

words, a claimant must be able to perform the full range of jobs in a given category, i.e., sedentary work, light work, or medium work."[24] The Ninth Circuit has explained that significant non-exertional impairments, such as poor vision or inability to tolerate dust or gases, may make reliance on the grids inappropriate.[25] But mere allegation of a non-exertional limitation "does not automatically preclude application of the grids. The ALJ should first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations."[26] The ALJ found that the grids accurately reflected Downs-Briggs' exertional limitations, and substantial evidence supports the finding that her non-exertional limitations did not preclude use of the grids. Thus, the ALJ's use of the grids was not in error.

III. The Other Claimed Deficiencies in the Opinion Are Not Persuasive

Downs-Briggs also argues that the ALJ failed to properly weigh subjective symptom testimony, and third-party opinion evidence.

When deciding whether to accept subjective symptom testimony from a claimant, the ALJ performs a two-step analysis.[27] In the first step, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptom. There is no question that objective medical evidence supported Downs-Briggs' claimed mental impairments. In the second step, in the absence of malingering, the ALJ may only reject the claimant's subjective

---

[24] *Tackett*, 180 F.3d at 1101.

[25] *Id.* at 1101-02.

[26] *Id.* at 1102.

[27] *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).

testimony as to the severity of the symptoms by making a specific finding stating clear and convincing reasons for the rejection, including what testimony is not credible and what facts in the administrative record lead to that conclusion.

Here, the ALJ rejected Downs-Briggs' subjective testimony because Dr. Huddleston, among other physicians, identified clinical inconsistencies and opined the exaggeration of symptoms was likely. This, combined with Downs-Briggs' own inconsistencies regarding the dates and severity of her symptoms, was sufficient to allow the ALJ to find Downs-Briggs not credible, and so reject her subjective testimony.

Downs-Briggs' allegations that the ALJ rejected the opinion of Mr. Melamed is invalid because the ALJ did discuss this opinion, as it was written in conjunction with Dr. Rockwell in June 2008. Next, the court addresses plaintiff's argument about the lay witness statements made by Downs-Briggs' mother. As a general rule, if the ALJ chooses to reject lay evidence, she may not do so without comment.[28] However, if the reviewing court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination," the reviewing court may find the error harmless.[29] The testimony, if credited, would not have affected the outcome of the decision, because the ALJ correctly applied the grids at Step 5, and incorporated Downs-Briggs' mental limitations into the decisions' residual functional capacity findings. The ALJ found that Downs-Briggs suffered from anxiety and bipolar disorders, which is consistent with the lay testimony. Thus, the outcome would not have

---

[28] *Nguyen*, 100 F.3d at 1467; *Dodrill*, 12 F.3d at 919; *see also Smolen*, 80 F.3d at 1289 (dismissing witness testimony simply because witness is family member not sufficiently germane to witness).

[29] *Stout*, 454 F.3d at 1056.

differed had the testimony been credited, and the failure to discuss the lay testimony was harmless error.

Finally, Downs-Briggs briefly argues that the ALJ failed to find her migraine headaches severe at Step 2, that the ALJ failed to fully and fairly develop the record, and that she met listing-level severity of bipolar disorder and migraine headaches at Step 3. The brief makes no legal arguments beyond these bare allegations, and the court finds no validity in these arguments.[30]

## V.  CONCLUSION

For the reasons set forth above, the ALJ's decision to deny benefits is supported by substantial evidence. This court finds no legal error. Plaintiff's Motion for Summary Judgment at Docket 17 is **DENIED**. The Clerk will please enter judgment for the Commissioner.

DATED this 29th day of October 2010.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

---

[30]Plaintiff bears the burden of proving that her headaches were a severe impairment, possibly precluding work, which she failed to do. *Yuckert*, 482 U.S. n.5. Plaintiff also failed to state how 20 C.F.R. pt. 404, Subpt. P, app. 1 § 12.04 applies to her situation in any way beyond conclusory statements in the Reply brief.